25 So.2d 153

**PEACH v. FIRST NAT. BANK OF BIRMINGHAM.**

**SAME v. CLARKE et al.**

6 Div. 367, 368.

Supreme Court of Alabama.

March 7, 1946.

J. L. Drennen, of Birmingham, for appellant.

Cabaniss & Johnston, of Birmingham, for appellee First Nat. Bank.

W. H. Brantley, Jr., of Birmingham, for appellee Clarke.

**GARDNER, Chief Justice.**

Basil M. Clarke, the father of Martha Minge Clarke Peach, presented a petition to the circuit court in equity seeking a modification of a decree entered in said court on June 17, 1943, wherein it was decreed that of the net income of the trust estate under the will of Susie M. Carter, deceased, petitioner, the father, should receive from the First National Bank of Birmingham, trustee under the will, 62%, and Martha Minge Clark Peach (then unmarried and referred to in the decree as Martha Minge Clarke) 38% of said net income. The petition was based upon changed conditions since the rendition of the decree of June 17, 1943. To this petition Martha Minge Clarke Peach interposed demurrer. A decree was entered overruling demurrer to the petition, and from this decree an appeal was prosecuted and constitutes on this docket Case No. 368.

To the petition of the father above referred to, the First National Bank, as trustee, and a party defendant to the petition, filed answer and cross-bill. To the cross-bill Martha Peach (to abbreviate her name) demurred and her demurrer was overruled. From the decree overruling the demurrer Martha Peach has prosecuted a separate appeal, being here Case No. 367. As is to be observed, these appeals relate to the same subject matter, between the same parties, and upon submission here it was understood the two appeals would be considered together. Such, therefore, will be the manner of treatment here.

Following the rendition of the decree of June 17, 1943, Martha Peach instituted a proceeding by her next friend to have the bank, as trustee, under the will of Susie M. Carter, deceased, pay to her as a co-beneficiary one-half of the net income from the trust created by said will, which said proceeding culminated in the decision of this Court as found in Clarke v. Clarke, 246 Ala. 170, 19 So.2d 526.

The pertinent features of the will of Susie M. Carter are to be found in Item III of the will, as set out in the report of the above-styled cause, and need not be here repeated. The ruling was to the effect that Basil Clarke, the son of Susie M. Carter, was the "main beneficiary" under the will. It was what is referred to as a "spendthrift trust" made by Susie M. Carter for the benefit of her son Basil, then unmarried, "and his family, should he have a family." It is these last words which led the court to the conclusion that Martha Peach was the recipient of her "grandmother's largess only because she is the child of this principal beneficiary, her father." The conclusion was that while she was an independent beneficiary by reason of this qualifying clause, the gift to her was limited for her "comfortable support and maintenance at all times." She was denied any fixed percentage of the net income, but was held to be entitled to a "reasonably sufficient amount to properly maintain and support her, having due regard to all the attendant circumstances, including the size of the estate, her own condition and station in life and that of her father."

The opinion stresses the terms of the trust which vests in the trustee a wide discretion. Therein we used the following expression:

"The reasonableness of the distributions to her is left to the discretion of the trustee by the terms of the trust, with the legal duty imposed to act with proper motives, in good faith, with wisdom and reasonable judgment."

The further holding was that, the fact that Martha Peach was an independent beneficiary under the terms of the will did not entitle her to a one-half interest of the net proceeds of the trust as she claimed, "nor to the right to dictate this or any other amount of disbursement to her or for her benefit." To further emphasize the large discretion vested in the bank as trustee by the testatrix, in subdivision (b) of Item III of the will there is express provision that the trustee may, if it sees fit, apply the income for the support of the son or his family, if he has a family, as the trustee may deem best, instead of paying over the income or any part thereof to the son.

It would be difficult to find a trust instrument with broader powers of authority and discretion to carry out the purpose of the trust than is to be found in Item III of this will.

In Case No. 368 the father, Basil M. Clarke, seeks a modification of the decree of June 17, 1943, where the net income is divided between himself and daughter in the ratio of 62% and 38%. His petition is rested upon the theory that under the decision of this Court in Clarke v. Clarke, su-

pra, the daughter is not entitled to any fixed amount but only to a comfortable support from the net proceeds, and the existence of changed conditions since the rendition of the aforesaid decree.

The changes relate to the fact that the daughter has reached majority, finished her schooling (then in progress when the decree was rendered) and that she has married Robert Peach, a senior grade lieutenant in the Naval Air Forces, with whom she is now living in the State of California, and who is supporting and furnishing her with comfortable support and maintenance. Counsel for appellant insist that none of these matters should be taken into consideration upon the question of modification of the decree of June 17, 1943, and a number of cases are cited to the effect that the fact that a member of a family has reached majority, or has an independent income otherwise, or able to earn a comfortable support, does not justify a modification of such a decree. A number of these cases are to be found in the notes to Cummings v. Tolman, 101 A.L.R. p. 1457, beginning on page 1462.

In view of the decision of this Court on former appeal, there is no occasion here to review these authorities. As an independent beneficiary, Martha is entitled from the net income to a comfortable support and maintenance, but as we have held, to no fixed amount. Much, as was observed on the former appeal, must depend upon the condition of the estate as well as the condition of the parties. See Vol. I, Scott on Trusts, §§ 127.3 and 128.4.

It is clear enough that Susie M. Carter was peculiarly concerned as to the welfare of her son. He was the principal object of her bounty. He was the main beneficiary. The petition of Basil Clarke was merely one to put in operation an inquiry from the court as to whether or not changed conditions would justify a reconsideration of the distribution of the net income. Matters of this character are not to be considered as requiring the strict formality of equity pleading, but are to be broadly viewed to reach the ends of justice. Changed conditions. must necessarily be considered if a fair and equitable distribution is to be made in accordance with this testatrix's will.

■■ The son, who is the main beneficiary, may find himself, as time goes on, in greater need and the daughter requiring less. Or, considerating the vicissitudes of life, the reverse situation may be presented. All these matters are to be considered in connection with the condition of the estate. Certainly, as to the schooling of Martha, that is a matter to be considered as an item of expense now eliminated. As an independent beneficiary, it is true that her marriage would not of itself justify the court or the trustee in depriving her of an equitable share of the net income. But as we have previously said, all these matters are to be properly considered in determining the question upon these changed conditions. We are, therefore, of the opinion that the court properly ruled in overruling the demurrer to the petition of Basil M. Clarke in Case No. 368.

As we see it, however, the decision in Case No. 368 is largely academic so far as it seeks a modification of the decree of June 17th. This for the reason that, in our opinion, the prayer of the trustee in the cross-bill seeking an order of the court permitting it to resume its functions as trustee under the will should be granted.

It appears from the answer and cross-bill that, following the decision of this Court in Clarke v. Clarke, supra, Basil M. Clarke, the son of testatrix, insisted that the trustee resume its functions under the will of Susie M. Carter, the said Basil M. Clarke and his daughter being in disagreement concerning the distribution of the net income. To this demand the respondent trustee replied that it was bound by the decree of June 17, 1943, and filed the cross-bill upon the theory that it was the duty of the trustee under the will to exercise its discretionary powers as to the distribution of that income for the use and benefit of said Basil M. Clarke and his daughter Martha Peach. The cross-bill refers to the opinion of this Court in Clarke v. Clarke, wherein the extensive discretionary powers under the will are commented upon, with the conclusion that the reasonableness of the distribution is a matter left in the discretion of the trustee by the terms of the trust, with the legal duty, however, imposed to act with proper motives, in good faith, with wisdom and reasonable judgment.

It is further averred that soon after the death of the wife of petitioner Basil M. Clarke, differences arose with reference to distribution of the net income as between petitioner Clarke and his daughter Martha. These differences resulted in a petition by the trustee seeking the advice and instructions of the court with reference to

467

the proper allocation to be made of the trust income as between these two. While said proceeding was pending the father and daughter agreed upon a proportionate distribution of the trust income, which agreement resulted in the decree of September 3, 1942, later supplemented and amended by the decree of June 17, 1943; that although said agreement and decrees withdrew from cross-complainant as trustee the function of exercising its discretion under the will with reference to the disbursement of the trust income, yet the trustee made no objection, due to the fact that the agreement and decrees seemed to be entirely satisfactory to the beneficiaries, and, of consequence, this respondent felt that the trust was being satisfactorily carried out.

The cross-bill discloses further differences, and that these disagreements between the father and daughter have continued, with no likelihood of an amicable adjustment. Cross-complainant as trustee, therefore, deems it to be its duty to resume its functions under the will. To that end a modification of the decrees of 1942 and 1943 above referred to is necessary so far as concerns the distribution of the net income to the beneficiaries under the will.

Cross-complainant seeks in the alternative for further directions as to the further distribution of the net income in the event the court declines to grant it relief as to resumption of its functions under the will. The objection of Martha Peach by way of demurrer to the cross-bill appears to be rested upon the theory that the proceedings disclosed the trustee has abandoned the trust, and therefore is not entitled to resume its functions under the will.

We are cited by counsel to 65 C.J. pp. 615, 625, 627, which treat the question of abandonment by a trustee or neglect of his trust to such an extent as would justify his removal; and to our own case of Coker v. Coker, 208 Ala. 354, 94 So. 566, where it appeared that the trustee not only wholly failed to exercise the discretion vested in him, but where the proof disclosed a total perversion of the trust. We have noted, also, other authorities, 65 C.J. p. 617; Wilson v. Wilson, 145 Mass. 490, 14 N.E. 521, 1 Am.St.Rep. 477; In re Ward's Estate, 92 Conn. 286, 102 A. 586.

We do not find, however, where any of these authorities are applicable to the situation as presented by this cross-bill. There has been no failure of the trustee to exercise its discretion. There has been no per-

version of the trust. There has been no misconduct, but on the contrary, so far as these proceedings disclose, the trustee has acted in good faith, with an honest effort to perform its functions under the will of Susie M. Carter.

The brief contains much criticism of the trustee for its failure, through the years of the management of this trust, to anticipate the holding that the daughter Martha would be held to be an independent beneficiary under the will. But nothing is here disclosed that would indicate any disregard of her rights or any failure on the part of the trustee to see that she had proper maintenance and support as a member of her father's family. Certainly, while with her mother, the trustee would appear to have had the right to assume the amount allocated to the mother sufficed also for the daughter. And no contention is made to the contrary. And when the mother died and differences arose between the father and the daughter, this trustee, presented with the difficulty of this disagreement, for its own protection and advice sought the decree of a court of equity. And, in fact, this decree at that time expressed the agreement of the parties.

This the trustee had a perfect right to do. In Gilmer v. Gilmer, 245 Ala. 450, 17 So.2d 529, 531, speaking to this question the Court observed:

"As a general principle when a trustee is in reasonable doubt as to the extent of his powers or as to the proper manner in which to proceed under the trust, he may apply to a court of equity, which will interpret the trust instrument when necessary and when it is ambiguous in order to give him directions without other equity appearing in the bill."

And in the more recent case of Sanderson v. Gabriel, 246 Ala. 493, 21 So. 2d 256, 263, is the following expression:

"Ordinarily when the trustee seeks guidance and instruction from the court as to his duty under the terms of the trust instrument, equity will take jurisdiction because such instrument is ambiguous and uncertain in its meaning, or difficult and embarrassing in its interpretation."

This is in keeping with the current of authority elsewhere, as is to be noted from an examination of cases found cited in the notes, 54 Am.Jur. p. 222.

But we find none of the cases holding to the effect that the mere application

of the trustee to a court of equity for advice and directions in regard to the administration of the trust constitutes in any manner an abandonment of the trust. Indeed, in Vol. II, Scott on Trusts, §§ 171 and 171.1 the author points out that as a general rule it is the duty of a trustee not to delegate to others the administration of the trust. And in § 188.4 it is noted that the trust estate should properly bear the expense of judicial proceedings relating to the administration of trusts, as for example, where the trustee applies to the court for instructions as to his duties or powers.

■ In speaking of the exercise of discretion on the part of the trustee and the instances in which the court will supervise the exercise of such discretion, in 54 Am.Jur. p. 229 is the following observation here applicable:

"In determining the extent of a trustee's discretionary power, the court may properly have in mind that when a trustor reposes a discretion in a trustee, he does so because he desires the honest judgment of the trustee, perhaps even to the exclusion of that of the court."

See Dumaine v. Dumaine, 301 Mass. 214, 16 N.E.2d 625, 118 A.L.R. 834.

We directed attention to the broad discretionary powers of the trustee under the will of Susie M. Carter, and we are persuaded that a mere reading of the trust provisions of this will is persuasive that the testatrix desired, first of all, the judgment and discretion of the trustee as to the distribution of the net income of her estate and that it was not in her contemplation that anyone else—not even the court—would supplant the discretionary power thus vested in the trustee of her choice, or would assume the duties thus imposed. The emphatic expressions on the part of the trustor, Susie M. Carter, give justification to the bank, as trustee, to ask the court for a modification of the decree that it may resume its functions under the terms of the will, particularly in view of the constant disagreement of the father and the daughter, and the intimate knowledge which the bank has concerning the estate, and the evident ease with which it could determine the needs of beneficiaries and the proper allocation of the funds in view of these needs and the condition of the estate.

■■ Of course, as pointed out by the authorities, a discretionary power in a trustee is not beyond the reach of judicial inquiry. For a court will interfere whenever the exercise of the discretion by the trustee is infected with fraud, or bad faith, misbehavior or misconduct, arbitrariness, the abuse of the authority, or the like. 54 Am.Jur. p. 228. In the exercise of discretion by the trustee there is a rule of reasonableness, as recognized by the authorities (Vol. II, Scott on Trusts, § 187.2) though, of course, a court will not without cause interfere to control a trustee in the exercise of a discretion vested in him. 54 Am.Jur. p. 228.

■ We forego further discussion as to this phase of the cross-bill. It appears clear enough that the trustee has a right to petition the court to so modify the decree as to reinvest in it the power to perform its functions under the trust provisions of the will.

■ There are grounds of demurrer, however, assigned to one phase of the cross-bill which we are persuaded should have been sustained. The cross-bill speaks of income now on hand. As we interpret it, this means income accumulated by virtue of the consent decrees of 1942 and 1943. If we have properly interpreted this phase of the cross-bill, no direction is due to be given for a disturbance of any accumulated income which was to be paid the daughter Martha by virtue of these consent decrees. If the income was more than was to be anticipated, and in excess of the immediate needs of Martha, that is not a matter now which should be open to further inquiry. She has a vested interest in any such sums accumulated under these decrees, which contain no condition whatever as to the payment thereof.

Whatever income, therefore, in the hands of the trustee, properly allocated to Martha Peach under the decrees here referred to, is due to be paid to her as a matter settled by these decrees. This view finds support in Cromwell v. Converse, 108 Conn. 412, 143 A. 416, 61 A.L.R. 663, and upon which comment is made in Vol. I, Scott on Trusts p. 675. Under equitable principles, any such accumulated income should not now be open to discretionary distribution. The grounds of demurrer addressed to this phase of the cross-bill take the point, and should have been sustained.

It results, therefore, that as to the cross-bill, the decree of the court below is due to be affirmed in part and in part reversed and remanded.

We have reached the conclusion that the costs of these two appeals, that in both Nos. 367 and 368, should be paid out of the trust fund. Clarke v. Clarke, supra. It will be so ordered.

Affirmed as to Case No. 368.

Affirmed in part and in part reversed and remanded as to Case No. 367.

FOSTER, LAWSON, SIMPSON, and STAKELY, JJ., concur.